[L. A. No. 9560. In Bank.—September 29, 1928.]

F. C. CARLSEN, Appellant, v. SECURITY TRUST & SAVINGS BANK (a Corporation), Respondent.

Kelby & Lawson, Lester R. Godward, Edwin V. McKenzie, J. H. Sapiro and Samuel R. Garroway for Appellant.

Newlin & Ashburn for Respondent.

THE COURT.—A petition for a hearing herein of this appeal was granted after a decision thereof by the district court of appeal, second district, second division. It was granted mainly for the reason that a similar petition was granted on the same day in the case of *Security Trust & Savings Bank* v. *Carlsen et al.*, post, p. 309 [271 Pac. 100], a case which arose out of the same controversy as is involved in the present action. After a further consideration of the opinion rendered in this action by the district court of appeal and written by Mr. Justice Craig and concurred in by the other members of said court, we are satisfied that said opinion correctly disposes of the question considered therein, and we adopt the same as the opinion of this court, which is as follows:

"This is an action for damages against the respondent bank as an escrow depositary, for failure to deliver certain muniments of title admittedly deposited with it in the escrow. For purposes of brevity the Security Trust & Savings Bank is referred to in this opinion as the bank, the Dominguez Land Corporation is termed the corporation, and the California Chemical Company is named the company.

"The facts essential to a presentation of the appeal are that the corporation as owner of certain apparently oil-bear-

ing land entered into an agreement to sell it to the company. In this connection an escrow was arranged with the First National Bank of Torrence. The company thereafter contracted to transfer its interest in said agreement of purchase to the plaintiff Carlsen. In that behalf an escrow was opened with the bank, respondent herein. As is usual in such cases, escrow instructions were signed by the company and Carlsen. The dispute centers primarily on the construction to be placed upon certain parts of these instructions. After the second escrow had been opened, letters, notices and demands, written and oral, were made by the parties herein mentioned. The instructions called for a certain guaranty of title. Soon after the escrow was begun the corporation filed suit to quiet title against the company, and recorded a *lis pendens* of the same. Carlsen appeared in said last-named action, assuming to be a 'John Doe' who had been made a party defendant therein. He asked affirmatively relief by way of a judgment quieting his title to the premises in question. Under these circumstances the bank did not complete the escrow, but held the documents and money which it had received, and finally after demand therefor had been made by Carlsen, it refused to deliver to him the muniments of title which the escrow instructions, as well as the agreement with the company, contemplated that he should receive upon the close of the escrow. This stand of the bank was based upon the theory that the escrow instructions requiring that a guaranty of title be furnished to the vendee could not be complied with while the suit brought by the corporation was pending.

"Many other facts are recited in the record and in the briefs, but in view of our decision upon the two pivotal points presented, it would only tend to confuse the issues to recount such details, which we deem unessential.

■ "Without a waiver of certain provisions of the escrow instructions the bank could not complete the escrow, because under such provisions it was necessary that before doing so it have 'a guarantee of title showing agreement last above mentioned and assignment of same to me and a good and sufficient grant deed, executed by said California Chemical Co., conveying said property to me.' The 'agreement last above mentioned' is the contract between the corporation and the company, and the instruction from which we

have quoted is signed by Carlsen. Appellant contends that by this provision nothing is required except a certificate showing the agreement and its assignment. However, we think this interpretation is too narrow and that both the language used and other stipulations in the agreement, which consist of the escrow instructions and the contract between the company and Carlsen, clearly indicate that it was the intention of the parties that the bank as escrow-holder have in its possession a guaranty in the sense that that term is ordinarily used, and which implies ownership of the property in question, with the title marketable and unencumbered. In the provision above quoted, that part which reads 'showing agreement last above mentioned and assignment of same to me' merely indicates that the title is to be brought down to Carlsen, and not to terminate as it often does with a certification that the vendor has title at the time he transfers to the vendee.

"That the parties understood that the vendee was to receive a definite and full title to the land and not merely an assignment of whatever interest the company might have in it is evidenced by the other documents involved in the transaction. In the agreement between the company and Carlsen, it is recited that the company has entered into a contract 'covering the sale and purchase of certain real property,' and that the company 'agrees to sell' to Carlsen all of the rights of the company in and to its agreement with the corporation, and to execute the necessary assignment and deed to carry the transfer into effect, so that Carlsen should receive the deed contracted by the corporation to be delivered to the company through the escrow with the First National Bank of Torrence. These references direct us back for further explanation of the understanding of the parties to the agreement between the corporation and the company. That contract provided that the corporation should 'deliver a certificate of title . . . showing title to said property to be vested in Dominguez Land Corporation free and clear of all encumbrances.' When we consider that the contract from which we have last quoted was one of the documents required to be and which was deposited in the escrow, as was also the contract between the company and Carlsen, it is apparent that these instructions must all be read together as forming an entire contract. The corpora-

tion was required to furnish a certificate of title showing its ownership, free and clear of all encumbrances, the company contracted to transfer that same character of title to Carlsen, and his requirement in the escrow instructions with the defendant escrow-holder requiring guaranty of title, etc., must be construed as calling for a certificate that the seller had title free and clear of all encumbrances; but in addition to this, that a transfer of such title had been made to Carlsen.

"We now proceed to a consideration of the question which both appellant and respondent state to be of the most vital importance in determining this appeal, to-wit, as to whether or not Carlsen waived the requirement as to guaranty of title. As we view the matter, this is not a difficult problem, nor one requiring any extended discussion. It is admitted that the only attempted waiver was an oral statement by Carlsen or his attorney. The escrow instructions agreed upon by the company, Carlsen and the bank, and to which all are parties, provides: 'No rescission of this escrow or modification of its terms or any notice or demand shall be of any effect without joint consent in writing, subscribed by the undersigned, and assented to by the bank.' Authorities cited by appellant announcing the general principle that a party to a contract may waive any provision contained within it and intended for his benefit, and also those holding such a waiver may be made orally, do not aid us in interpreting the agreement here in question. In the absence of the stipulation which we have just quoted, doubtless the vendee might have waived a direction to an escrow-holder concerning the kind of guaranty required. It may be that under certain circumstances and particularly where the modification of the contract has been acted upon by the parties, a waiver may be verbal. But here the parties have deliberately affixed their signatures to an agreement which is so clear that it has not been suggested that it can have any other meaning than that plainly expressed by it. This covenant is that there shall be no modification of the terms of the escrow instructions without joint consent in writing, subscribed by the company, by Carlsen, and also assented to by the bank. It is of no moment and therefore we need not analyze the motive which may have actuated the parties in making this agreement. The language of this proviso clearly

indicates that the escrow-holder should not under any circumstances assume the burden of attempting to settle a dispute between the parties except upon strict compliance with the letter of the instructions. However, we need not consider whether or not the requirement for a guaranty of title is one solely for the benefit of Carlsen, nor what, present or future, actual or possible, interest the company or the bank might have had in such requirement. It is not within the province of the court to redraft a contract which the parties, as to whose contracting capacity no question is raised, have executed. It may be observed in passing that in the face of such a provision in the escrow instructions if the appellant had sincerely desired to waive the requirement as to guaranty of title, it would seem that he would at least have placed a written waiver signed by himself with the escrow-holder. Had he even taken this step he might be in a position to present the question for decision by this court as to the necessity that consent be joined in by the company and assented to by the bank; but not having himself executed a waiver, in the form required by his agreement with the other parties, he is not, and never has been in position to demand the closing of the escrow, and this is true without regard to the necessity for the other parties joining with him in a waiver. The requirement that any modification in the escrow instructions be in writing is a perfectly reasonable one, quite obviously for the benefit of the escrow-holder, and one which neither the vendor nor the vendee could eliminate from the contract.

"In view of our decision upon the points discussed, it is not necessary to consider others presented."

The judgment is affirmed.

PRESTON, J., Dissenting.—I dissent. The escrow party based its refusal to carry out the escrow solely upon the ground that the title company would not furnish the certificate the contract required to be furnished by the seller. It cannot be doubted that this provision was solely for the benefit of the purchaser Carlsen. Admittedly Carlsen repeatedly offered to waive it—not only this, but he repeatedly offered to sign and execute any kind of a release or acquittance the escrow party might see fit to require. Admittedly the purchaser performed every covenant on his part

to be kept and performed under the contract, including payment to said escrow-holder of every dollar of the escrow price for said property. The escrow party did not at any time complain that such waiver and offer of release was parol. This estopped it to assert that said waiver was ineffectual because it was oral.

The escrow agreement contained the following clause: "No rescission of this escrow or modification of its terms or any notice or demand shall be of any effect without joint consent in writing, subscribed by the undersigned, and assented to by the bank." A literal interpretation of this paragraph is made the basis of the conclusion announced in the majority opinion. It may well be doubted whether a waiver by one party to a contract of a covenant made expressly and solely for his benefit is indeed a modification of the terms of an escrow. To say that a paragraph such as this is binding literally upon the escrow-holder is to say that the escrow agreement has no efficacy whatsoever. Under such a construction one of the parties to the contract could be the escrow-holder. Indeed, under this construction one party to a contract could by his own wilful act defeat the performance on his part of his own solemn covenant.

The necessary deduction from the majority opinion is a principle similar to the case where a debtor gave his creditor a promissory note payable when convenient with the proviso that if not so paid the note was to be null and void.

I can see no substance whatever in the material used in making up the conclusion of the court in this case. The question is important and an erroneous pronouncement will be far-reaching in its ill effects.

The judgment of the court below should be reversed.

Rehearing denied.

Seawell, J., and Preston, J., dissented.