[Civ. No. 5265. Third Appellate District.—May 13, 1935.]

FERDINAND PALMA, Appellant, v. WILLIAM LESLIE et al., Respondents.

Chas. H. Brock, Earl E. Johnson, Arch H. Vernon, O'Melveny, Tuller & Myers, Pierce Works and John A. Powell for Appellant.

Spencer Austrian for Respondents.

WOODWARD, J., *pro tem.*—Plaintiff, Ferdinand Palma, appeals from a judgment denying him the relief sought, and decreeing the reformation of a certain deed as prayed for by defendants in their cross-complaint. Originally, appellant's action was instituted for the purpose of obtaining a vendor's lien upon real property conveyed by him to respondents, pursuant to the terms of a contract of exchange. After the complaint had been amended several times the parties ultimately filed a written stipulation, wherein appellant waived his right to the specific lien demanded, and agreed, in lieu thereof, that respondents should deposit the sum of $15,000 with an escrowee to guarantee satisfaction of judgment for the amount of said lien should appellant prevail in the action.

The sole question presented for determination here is whether the trial court committed error in the admission of parol evidence.

Points relied on for reversal narrowly delimit the field of inquiry, and make an elaborate presentation of facts unnecessary. Succinctly stated, the controversy between the parties involves the question of whether respondents' property was to be accepted by appellant subject to all street assessments of record, or merely to such assessments of record as were not delinquent on March 5, 1930, the date the transaction was consummated.

The escrow instructions contain two seemingly contradictory provisions which we place in juxtaposition for the sake of clarity. Under the printed caption, ''following are the legal

descriptions of the properties, the title conditions under which each parcel will be conveyed, its appraised value and the value of the equities conveyed in so far as this escrow is concerned'', it is stated that parcel one (property transferred by respondents), is subject to ''taxes for 1930, 1931, conditions, restrictions, reservations, rights-of-way, and easements of record— *all assessments of record, and any proceedings for condemnation of right-of-way for street purposes''*. The last clause, which we have italicized, is typewritten. On page 2 of the escrow instructions, under the general subject of title insurance, is a provision, also typewritten, that said parcel one shall be free of encumbrances except *''any assessments of record but not delinquent* and any proceedings for right-of-way or condemnation for street purposes''. The typewritten or italicized portion of the first provision readily suggests that the parties believed the printed stipulations necessitated an amendment to meet the particular requirements of the transaction. Respondents' grant deed to appellant, bearing the same date as the escrow instructions, makes no mention of assessments delinquent or otherwise, but does recite that the property conveyed is ''subject to taxes for the fiscal year 1930–31, conditions, restrictions, reservations, rights, and rights-of-way of record''.

Shortly after the exchange of properties had been completed the appellant discovered for the first time, so he averred in his complaint, that the parcel received by him was encumbered with delinquent assessments of record aggregating the sum of $9,948.09 placed thereon by the city and county of Los Angeles for the improvement of Beverly Boulevard, whereas he had expected to pay, relying upon the escrow agreement, approximately $2,800 for an assessment covering a different public project and not delinquent. Thereafter, on August 13, 1931, appellant obtained a loan from the Realty Tax & Service Company, a corporation, and as security therefor mortgaged the property in question. The corporation, it seems, eventually induced the city of Los Angeles to accept payment of such delinquent assessments without penalty. Appellant thereupon instituted the present action, claiming that he was liable, under the terms of the mortgage, to the Realty Tax & Service Company for the amount paid on account of the assessments. Respondents filed an answer and cross-complaint setting forth ''that by mistake of the scrivener who drew the deed and by the mutual mistake of cross-complainants and

cross-defendant'', said deed failed to recite that said property was conveyed subject to ''all assessments of record and any proceedings for condemnation of right-of-way or street purposes . . . '' and praying for a reformation of the instrument to the end that it might ''properly describe the conditions under which said properties were conveyed''.

During the trial of the cause respondents contended that the contract of exchange, to which we will allude later, the escrow agreement, and the deed, all bore the same date, grew out of the same transaction, and should be read together as one agreement. Consistent with this position respondents offered, and the court admitted, over the objection of appellant, parol evidence with respect to preliminary negotiations between the parties and their situation at the time the transaction was consummated, such evidence being received on the theory that the escrow instructions were ambiguous, and that parol evidence was necessary to remove the ambiguity and ascertain the intent of the parties. It was appellant's position, then, as it is now, that such testimony was clearly inadmissible and constituted prejudicial error; that the essential question for the court was not one of explanatory evidence, but of the proper construction of a definitely worded contract. And in this connection appellant urged that the second of the disputed provisions in the escrow agreement was special or particular in character and, under statutory rules of construction, should govern as against the former general provision.

Eliminating, for the moment, any reference to the deed or agreement of exchange, can it be said that the escrow instructions were so ambiguous as to legally justify the introduction of explanatory parol evidence? ▉ Merely because a contract may appear ambiguous by reason of loose phrasing, or mutually repugnant provisions, manifestly does not in every instance justify a resort to parol evidence. If the rule were otherwise, endless confusion would result. As pointed out in an early case by Justice Story, wherein he was attempting the delicate task of differentiating between patent and latent ambiguities—''if the language be too doubtful for any settled construction, by the admission of parol evidence you create, and do not construe, the contract. You attempt to do that for the party which he has not chosen to do for himself; and the law very properly denies such an authority to courts of justice''. (4 Jones' Commentaries on Evidence, 2d ed., p. 2828.) Or, as stated by the late Justice Henshaw, in *United Iron*

*Works* v. *Outer H. etc. Co.*, 168 Cal. 81 [141 Pac. 917] : "The rule is well settled that where the parties have reduced to writing what appears to be a complete and certain agreement, importing a legal obligation, it will, in the absence of fraud, accident or mistake, be conclusively presumed that the writing contains the whole of the agreement between the parties, and parol evidence of prior, contemporaneous or subsequent conversations, representations or statements will not be received for the purpose of adding to, or varying the written instrument." (See, also, sec. 1625, Civ. Code; *Carlsen* v. *Security Trust & Savings Bank*, 205 Cal. 302 [271 Pac. 104] ; *Calpetro Producers Syndicate* v. *Chas. M. Woods Co.*, 206 Cal. 246 [274 Pac. 65] ; *Kunz* v. *Anglo & London-Paris Nat. Bank*, 214 Cal. 341 [5 Pac. (2d) 417].) It is rudimentary, of course, that when seeming uncertainties can be removed from a contract by the application of statutory or other established rules of interpretation, the instrument, in law, is not ambiguous.

On the other hand, there are contractual situations in which the court may resort to parol evidence, not to void or vitiate the apparent conflicting provisions of an instrument, but to harmonize them, and, when possible, give meaning and effect to each and all. (Sec. 1858, Code Civ. Proc.; *Lassing* v. *James*, 107 Cal. 348 [40 Pac. 534].) Keeping in mind its limitations, this salutary general rule is well stated in Jones' Commentaries on Evidence, *supra*, at page 2851: "Courts, in the construction of contracts, look to the language employed, the subject-matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and, in that view, they are entitled to place themselves in the same situation as the parties who made the contract, to view the circumstances as they viewed them in order to judge the meaning of the words and the correct application of the language to the things described. Hence, it is frequently necessary, in order to construe written instruments, to receive evidence of accompanying facts, other than those which serve to apply the instrument to the subject-matter or the persons intended. Under some circumstances, not only the situation and relation of the parties, but also their acts, negotiations and statements, may be proved as part of the surrounding facts which throw light on the transaction."

That the escrow instructions in question are ambiguous cannot be gainsaid. The respondents, not unmindful

of the rule of interpretation contained in section 1859 of the Code of Civil Procedure, and already referred to here, naively suggest that the conflicting provisions were intended to refer to two separate matters, the first to the title conditions, and the second to disbursements and title insurance. While not fully appreciating the subtle distinction attempted by respondents, we are nevertheless convinced that the rule of construction urged by appellant is inapplicable to the contract in question. It does not reasonably appear, we think, that the second provision of the escrow instructions is "particular" in the sense intended by section 1859 of the Code of Civil Procedure, and for that reason it should not supersede or vitiate the language of the former provision. Insertion of the typewritten clause, "any assessments of record but not delinquent", might well indicate that appellant had knowledge of the delinquencies and sought to avoid the payment of penalties. If the parties intended, by the use of such clause, that the Beverly Boulevard assessments should not be paid by appellant, it would have been an easy matter, especially in view of the large sum involved, to state their agreement in simple, unequivocal language.

Attention should be called to the fact that both of the provisions in the contract burden parcel one with any proceedings for condemnation or right-of-way for street purposes. This is a significant circumstance. The evidence discloses that on January 10, 1930, the respondent and others commenced an action against the city of Los Angeles wherein they sought to invalidate the assessment in dispute here. At the time appellant and respondents exchanged properties, this suit was pending, and while it was not an action in condemnation, it was at least a proceeding, and its pendency on March 5, 1930, might reasonably account for a portion of the phraseology employed in both provisions of the escrow instructions. It would seem, therefore, that appellant's contention that he was expressly relieved from paying the Beverly Boulevard assessments, all of which were delinquent, is repugnant to, and wholly inconsistent with the stipulation that he was to accept parcel one subject to "any proceedings for right-of-way or condemnation for street purposes". In these circumstances the court did not err in resorting to parol evidence to explain the ambiguity in the escrow instructions.

Then, too, there was another reason which justified the ruling. As already pointed out, respondents filed a cross-com-

plaint which averred that, because of mutual mistake, the deed should be reformed. When mistake is put in issue by the pleadings, and the same is mutual, the court may resort to parol evidence. (*Harding* v. *Robinson*, 175 Cal. 534 [166 Pac. 808].) The fact that the cross-complaint was addressed to the deed, to the apparent exclusion of the escrow instructions, is immaterial. These instructions, standing alone, were sufficiently ambiguous to necessitate explanatory testimony. Moreover, the court was justified in considering the instructions and the deed as one instrument. (Sec. 1642, Civ. Code.)

A third instrument, the contract of exchange, was also received in evidence over the objections of appellant. This instrument bore only the signature of respondent William Leslie, who testified that he had seen the appellant's signature on the original copy, but admitted that he had not seen appellant sign the same, and was not familiar with his handwriting. The foundation for the introduction of the document was insufficient, and the court should have sustained appellant's objection thereto. The error was, in our opinion, harmless.

Appellant was not called as a witness. Respondent, Leslie, testified that during the negotiations with appellant he advised the latter that parcel one would be exchanged subject to all assessments of record. The exchange agreement, which he claimed appellant signed, but which does not bear the latter's signature, provided that respondents' property was to be exchanged "subject to assessments of record and proceedings with reference to rights-of-way and leases now on property". A. C. Pearlman, the real estate broker who dictated the escrow instructions, testified that he secured his data from the agreement of exchange, and intended to follow the provisions of that alleged agreement. He admitted that he had received no instructions from the parties to incorporate in said escrow agreement any provision with reference to delinquent assessments. This was done, so he averred, on his own responsibility and in conformity with "the spirit of the contract from the conversation I had with both parties".

With the aid of testimony, to which we have but briefly referred, the court found that it was the intention of the parties that parcel one should be accepted by appellant subject to all assessments of record and subject to the suit which respondent and others had instituted to test the validity of said assessments. The court also found that respondents' deed should

be reformed to express the actual intent of the parties with respect to the transaction.

We conclude that it was not error for the trial court to permit the introduction of oral evidence bearing upon the question of the intention of the parties. We feel, also, that the construction placed upon the contract, as evidenced by the findings, is reasonable and sustainable by the language of the instrument. When this is true an appellate court will not substitute another interpretation, though it may seem equally tenable. (*Payne* v. *Pathe Studios, ante,* p. 136 [44 Pac. (2d) 598].)

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 11, 1935.