[Civ. No. 44942. Second Dist., Div. Two. July 28, 1975.]

JOINT HOLDINGS & TRADING COMPANY, LTD.,
Plaintiff and Respondent, v.
FIRST UNION NATIONAL BANK OF NORTH CAROLINA,
Third Party Claimant and Appellant.

## COUNSEL

Hill, Farrer & Burrill, William McD. Miller and Charles R. Gustafson for Third Party Claimant and Appellant.

John E. Droeger, Edward V. Pollack, and Hall, Henry, Oliver & McReavy for Plaintiff and Respondent.

## OPINION

**FLEMING, Acting P. J.**—Joint Holdings & Trading Company, Ltd. (plaintiff) and First Union National Bank of North Carolina (Bank) dispute the priority of their competing creditor liens against 42,888 pairs of trousers. Plaintiff asserts priority by virtue of writs of attachment issued in its pending lawsuit against Peter J. Brennan, Inc., and Peter J. Brennan, Inc. of American Samoa; Bank asserts priority for its security interest based on its financing agreements with the Brennan corporations. Bank appeals the judgment which declared its claim to the trousers invalid and its lien subordinate to that of plaintiff.

### BACKGROUND

According to the testimony of its managing director Thomas Hood, plaintiff, a Hong Kong corporation, produced partially finished trousers in Taiwan from fabric selected by the Brennan corporations and there sold the trousers to Brennan, who then shipped them to American Samoa for further furnishing. Thereafter, Brennan shipped the trousers to the United States. The trousers in controversy apparently reached American Samoa in mid-August 1973 and arrived by ship in Los Angeles in mid-October 1973.

In March 1972 and September 1973 Bank and the Brennan corporations entered security agreements encompassing the latter's inventory of trousers as collateral for future loans. On both occasions Bank filed these agreements in North Carolina under legal procedures required to perfect its security interest in that state. Bank later loaned Peter J. Brennan, Inc., more than $1.2 million.

On 12 October 1973 plaintiff sued the Brennan corporations in Los Angeles Superior Court for $424,531.06 owed on sales of trousers and obtained writs of attachment which the sheriff levied on 42,888 pairs of trousers in the possession of a carrier in Los Angeles consigned to defendant Peter J. Brennan, Inc., in North Carolina.

Pursuant to Code of Civil Procedure sections 689 and 689b[1] Bank on 26 October 1973 filed a third-party claim with the sheriff, asserting a paramount security interest in the attached trousers based on its financing agreements with Peter J. Brennan, Inc. Plaintiff petitioned the superior court for a hearing on the validity of Bank's asserted interest, and issue was joined on questions of priority of lien[2] and choice of law.[3]

[1]Sections 689 and 689b provide a special remedy for a third party claiming rights in property held under a writ of attachment either as owner of the property (§ 689) or as seller, mortgagee or holder of any other security interest in the attached property (§ 689b; see *Imperial Metal Finishing Co.* v. *Luminous Ceilings West, Inc.*, 270 Cal.App.2d 390 [75 Cal.Rptr. 661].) If the third party claims a paramount security interest, he files a statement with the sheriff asserting the interest and the sum due on the interest. The party in whose favor the writ of attachment runs must pay the sum due or file a statement asserting the invalidity of the security interest and post an undertaking. If no undertaking is posted, the sheriff may release the attached property. Whether or not an undertaking is posted, the parties are entitled to a prompt hearing on the validity of the security interest in the court which issued the writ of attachment. At the hearing the third-party claim constitutes the pleading and the third-party claimant has the burden of proof. The court gives judgment determining the validity of the third-party claim conclusively between the parties. No findings are required, and the judgment is appealable. If judgment is for the party in whose favor the writ of attachment runs, the sheriff must retake any attached property he released.

[2]The California Uniform Commercial Code contains the rules of priority for the competing creditor interests in personal property. A holder of a writ of attachment is a lien creditor (§ 9301, subd. (3)) and the rights of a lien creditor take priority over those of a holder of an unperfected security interest unless, the security interest is perfected within 10 days after it attaches. (§ 9301, subd. (1)(b).) A security interest is perfected when it has attached and all applicable steps for perfection have been taken. (§ 9303.) A security interest attaches as soon as creditor and debtor agree that it attach, the creditor gives value and the debtor has rights in the property. (§ 9204.) To perfect an interest in trousers, a financing statement must be filed with the Secretary of State. (§§ 9302, 9401.)

[3]The California Uniform Commercial Code provides for choice of law where more than one jurisdiction has an interest in a personal property secured transaction. Section 9102 provides that "(1) Except as otherwise provided in Section 9103 on multiple state

TRIAL COURT'S FINDINGS

The trial court found the trousers had been shipped by Peter J. Brennan, Inc., from American Samoa via Los Angeles consigned to Peter J. Brennan, Inc., Charlotte, North Carolina. When the trousers arrived in the United States on 12 October 1973, Peter J. Brennan, Inc., already had rights in and owned the trousers. Plaintiff levied its writs of attachment on 12 October and 17 October 1973. On 26 October 1973 Bank asserted a paramount interest in the trousers based on a security interest and on financing statements filed in North Carolina in March 1972 and in California on 25 October 1973 and 1 November 1973.

The court found that Bank's security interest in the trousers did not attach to the trousers in California or in North Carolina, that neither Bank, Peter J. Brennan, Inc., nor Peter J. Brennan, Inc. of American Samoa understood that the trousers were to be kept in any particular state or jurisdiction. Any security interest asserted by Bank was not perfected in any jurisdiction in which the trousers had been located prior to the time they were first attached by plaintiff. The court concluded that any right Bank had in the trousers on 26 October 1973 was subordinate to prior attachment liens secured by plaintiff.

---

transactions . . ., this division [division 9 of the California Commercial Code] applies so far as concerns any personal property and fixtures within the jurisdiction of this state (a) To any transaction (regardless of its form) which is intended to create a security interest in personal property . . . ."

Section 9103, subdivision (3), provides: "If personal property other than that governed by subdivisions (1) and (2) is already subject to a security interest when it is brought into this State, the validity of the security interest in this State is to be determined by the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached. However, if the parties to the transaction understood at the time that the security interest attached that the property would be kept in this State and it was brought into this State within 30 days after the security interest attached for purposes other than transportation through this State, then the validity of the security interest in this State is to be determined by the law of this State. If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this State, the security interest continues perfected in this State for four months and also thereafter if within the four-month period it is perfected in this State. The security interest may also be perfected in this State after the expiration of the four-month period; in such case perfection dates from the time of perfection in this State. If the security interest was not perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this State, it may be perfected in this State; in such case perfection dates from the time of perfection in this State."

164

## DISCUSSION

■  Bank contends that under North Carolina law it had a perfected security interest entitled to priority over plaintiff's writs of attachment, that the trial court erred in using the law of California rather than of North Carolina to determine priority of creditor interests. Bank bases its contention on the general conflict-of-laws doctrine that a court should apply the law of the jurisdiction where all material contacts are centered. Bank argues that all material contacts centered in North Carolina in that the parties created the security agreement in North Carolina; they provided that North Carolina law should govern the agreement; the trousers were destined for North Carolina when plaintiff attached them in California; California had no other interest in or contact with the transaction.

However, the Commercial Code does not adopt the general conflict-of-laws doctrine urged in Bank. Section 9102 states that the code applies to any secured transaction in personal property "so far as concerns any personal property and fixtures within the jurisdiction of this State." Thus the code adopts the "situs" rule for choice of law. (3 Cal. Commercial Law (Cont.Ed.Bar 1966) p. 23.) The trousers were sited in California when the disputed claims arose.

The general rule of section 9102 is subject to exceptions for multi-state transactions enumerated in section 9103 (see fn. 3). Bank urges that the second sentence of section 9103, subdivision (3), adopts the general conflict-of-laws doctrine as an exception to the situs rule and should be applied here. That second sentence states: "However, if the parties to the transaction understood at the time that the security interest attached that the property would be kept in this State and it was brought into this State within 30 days after the security interest attached for purposes other than transportation through this State, then the validity of the security interest in this State is to be determined by the law of this State." Bank argues that by negative implication this exception means that when goods are in California for purposes of transit only, then the law of the state to which the goods are destined should apply.

But the language of the Code, read in context, fails to support Bank's position. The second sentence of section 9103, subdivision (3), begins with the word "However," which logically indicates that it is to be read only as an exception to the first sentence: "If personal property . . . is

already subject to a security interest when it is brought into this State, the validity of the security interest in this State is to be determined by the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached."

Exception to the situs rule for law applicable to property in California in multi-state transactions is thus based on the law of the jurisdiction where the property was when the security interest attached. And the second sentence is limited to this meaning: Even if the security interest attached while the property was in another jurisdiction, the law of this state determines the validity of the security interest where the property was brought into this state within 30 days after the security interest attached for purposes other than transportation through this state. The second sentence therefore was intended to refer back to California law and the situs rule of section 9102, not to refer to the law of yet another jurisdiction to be determined by the undisclosed intent of the parties to the secured transaction.

Bank finds support for its position in a discussion of section 9103, subdivision (3), by a text commentator, Gilmore, Security Interests in Personal Property (1965) section 22.9, pages 628-631. Gilmore's analysis, however, is premised on a conflict of laws between two Uniform Commercial Code jurisdictions. Gilmore concedes that if the jurisdiction in which the security interest attaches is a non-code jurisdiction, the security interest must be perfected in that jurisdiction (at p. 631). In this case, when the security interest supposedly attached, the trousers were either in Taiwan or American Samoa, non-code jurisdictions. Bank failed to prove perfection of a security interest in either of these two non-code jurisdictions. It would make little sense to give world-wide priority of lien as a result of a filing in one jurisdiction with respect to goods outside that jurisdiction which had never been in the jurisdiction and were wholly unconnected with it. At bench, the North Carolina lien is entitled to little more weight than would be given to one filed in Liberia, Luxemburg, or Lichtenstein.

Bank's burden to protect its security interest in the trousers under the Commercial Code is not difficult. If the trousers are intended for a final destination other than the one where the security interest attaches to the trousers, Bank need only perfect its interest in the jurisdiction where the interest attaches (Taiwan or American Samoa) and in the jurisdiction of intended destination (North Carolina). If the trousers meet unexpected

delays, section 9103, subdivision (3), allows Bank four months to perfect the interest in the jurisdiction where the goods are delayed.

Alternatively, Bank could have maintained legal title to or physical control over the trousers.

Furthermore, even assuming that Bank correctly interprets the law, its cause still fails on the facts. The trial court found that Bank and the Brennan corporations did not understand at the time any security interest attached that the trousers would be kept in any particular state or jurisdiction. Bank bore the burden of proof, yet it offered no evidence to establish that the trousers were destined for or would ever reach North Carolina. Addresses on shipping labels do not in themselves establish the intended final destination of the trousers.

Bank urges several procedural errors in the trial court. It contends the court failed to find on material issues of fact and made findings on irrelevant issues. But Code of Civil Procedure sections 689 and 689b provide that the trial court need make no findings, so Bank has no basis to complain about failure to make findings. In any event, the court made the only findings necessary to dispose of the cause under the pertinent sections of the Commercial Code. ■ Irrelevant findings, if there were any, could not prejudice Bank's cause.

■ Bank contends the court erred in excluding from evidence a "security agreement and notice of lien" purportedly signed by Peter Bruder on behalf of *Peter J. Brennan, Inc. of American Samoa* in favor of claimant on 26 September 1973 and recorded in American Samoa on 27 September 1973. The trial court found that Bank had not sufficiently authenticated Bruder's signature to permit its admission in evidence. Bank argues that it offered sufficient authentication because one of Bank's officers testified that the signature appeared similar to other signatures of Bruder he had seen on documents and checks drawn on Bruder's accounts with Bank. Authentication is a factual question. (Evid. Code, § 1400.) Bank's authentication witness had not seen Bruder sign his name, nor had he made a side-by-side comparison of the Bruder signatures. The trial court acted within its discretion in concluding that Bank failed to carry its burden of authentication of the purported lien and security agreement. (*Palma* v. *Leslie,* 6 Cal.App.2d 702, 709 [45 P.2d 391].) Moreover, the record fails to show that Bank had incurred substantial rights under the purported security agreement with *Peter J.*

*Brennan, Inc. of American Samoa*; Bank had loaned $1.2 million to *Peter J. Brennan, Inc.*, the North Carolina corporation.

■ Bank contends the trial court erred in refusing to permit it to present its case on affidavits or, in the alternative, to permit a 60-day continuance to allow out-of-state witnesses to appear. Bank asserted at trial that comments by the court in pretrial proceedings led it to believe the cause would be heard on affidavits rather than in-court testimony. The hearing court apparently concluded this belief was unreasonable under the circumstances. But even if Bank's erroneous belief was reasonable, the court had valid grounds for refusing a continuance. Plaintiff's witnesses had come from Hong Kong and American Samoa for the hearing, and a 60-day continuance would have imposed a heavy burden on plaintiff.

■ Bank also contends the trial court erred in refusing to grant a continuance when one of Bank's counsel had to leave in mid-hearing for an appearance in another case. (See *Palomar Mortgage Co.* v. *Lister*, 212 Cal.App.2d 236 [27 Cal.Rptr. 863].) We find no error. The hearing was scheduled for a full day in court, yet Bank's counsel invited conflict by scheduling an appearance in another case for the afternoon of the same day. In any event Bank suffered no prejudice since other counsel remained to participate in the hearing on its behalf.

The judgment is affirmed.

Compton, J., and Beach, J., concurred.

A petition for a rehearing was denied Autust 19, 1975, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was deniedNovember 20, 1975.