Filed 8/2/16  Quintana v. American International Industries CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| DULCE QUINTANA, | B262241 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC562040) |
| v. | |
| AMERICAN INTERNATIONAL INDUSTRIES, | |
| Defendant and Appellant. | |

        APPEAL from an order of the Superior Court of Los Angeles County,
Michael P. Linfield, Judge.  Affirmed.


        Conkle, Kremer & Engel, John A. Conkle, H. Kim Sim, and Emil Davtyan for
Defendant and Appellant.


        Law Offices of Ramin R. Younessi, Ramin R. Younessi and Christina M.
Coleman for Plaintiff and Respondent.


_____

## INTRODUCTION

Plaintiff Dulce Quintana sued Defendant American International Industries for wrongful discriminatory employment termination. Defendant appeals the trial court's denial of its petition to compel arbitration of Quintana's claims, asserting that the trial court erred in finding that no valid, enforceable arbitration agreement existed. We affirm because Defendant failed to show that Quintana executed an arbitration agreement and thus consented to the arbitration terms.

## FACTS AND PROCEDURAL BACKGROUND

Quintana cannot read, write, or understand English. In July 2012, Quintana applied for employment with Defendant, filling out an employment application. Quintana began working for Defendant in July 2012, and worked for Defendant for a little more than a year. In October 2014, Quintana brought the present lawsuit against Defendant, alleging wrongful termination, discrimination, and other related causes of action.

In response, Defendant filed a petition to compel arbitration, alleging Quintana signed an employment application and an employee trade secrets and inventions agreement, both containing clauses that require her to arbitrate all disputes regarding her employment. Attached to the petition was the declaration of Charlie Loveless, the Vice President of Operations for Defendant, and the partially-redacted employment application and trade secrets agreement allegedly signed by Defendant. Loveless attested it was Defendant's "policy and the regular course of business" to require prospective employees to sign an application for employment and an employee trade secrets and inventions agreement. He stated:

2

"Attached as Exhibit 1 is a true and correct copy of Ms. Quintana's Application for Employment with [Defendant] from [Defendant]'s records and files. I recognize Exhibit 1 as the form used by [Defendant] in or around May 2012 for persons seeking employment with [Defendant]. As a matter of [Defendant]'s policy and regular course of business, Exhibit 1 was signed by Ms. Quintana when she applied for employment [with Defendant], which was retained at [Defendant]'s offices in Los Angeles, California immediately thereafter. Exhibit 1 has been partially redacted because it contains private, personal information of Ms. Quintana." (Boldface omitted.)

As to the trade secrets agreement (Exhibit 2), Loveless similarly attested to its authenticity by stating it was a true and correct copy signed by Quintana "[a]s a matter of [Defendant]'s policy and regular course of business . . . before she began her employment" with Defendant. Defendant provided no other evidence to show Quintana actually signed the two documents.

In opposition, Quintana asserted Defendant failed to meet its threshold burden of establishing the existence of an agreement to arbitrate. Quintana specifically argued Loveless's declaration failed to establish any foundation to authenticate her signature on either document containing the arbitration clauses. She also asserted the alleged agreements to arbitrate were unconscionable. In the declaration accompanying her opposition, Quintana admitted she had filled out an employment application in Spanish, but attested she could not tell if Defendant's Exhibit 1 was the employment application she completed because "most of it has been redacted." She asserted she did "not recall signing the Trade Secrets Agreement."

The trial court denied the petition to compel arbitration, concluding Defendant has not met its burden to show that a valid arbitration agreement existed. The court opined that "Loveless has not shown that he has any personal knowledge as to whether the agreements were actually executed by [Quintana]." The court pointed out Loveless declared that he recognized the form agreements and merely assumed Plaintiff had signed them because it was Defendant's policy and course of business to have prospective employees do so. The court also found the agreements were unconscionable. Defendant now appeals.

3

# DISCUSSION

"A motion to compel arbitration is essentially a request for specific performance of a contractual agreement. [Citation.] The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of an arbitration agreement." (*Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 239.) "Petitions to compel arbitration are resolved by a summary procedure that allows the parties to submit declarations and other documentary testimony and, at the trial court's discretion, to provide oral testimony." (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 586.) The trial court shall order parties to arbitrate only "if it determines that an agreement to arbitrate the controversy exists." (Code Civ. Proc., § 1281.2.) On appeal from the denial of a motion to compel arbitration, "we review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law. [Citations.] Although public policy favors arbitration in general, we will not infer that the right to a jury trial has been waived absent a clear agreement to submit the dispute to arbitration." (*Kleveland v. Chicago Title Ins. Co.* (2006) 141 Cal.App.4th 761, 764.)

We agree with the trial court that Defendant has failed to meet its burden to establish the existence of a signed arbitration agreement. "Generally speaking, documents must be authenticated in some fashion before they are admissible in evidence." (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 525.) "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (Evid. Code, §1400.) Having alleged Quintana entered into written arbitration agreements, Defendant had the burden to demonstrate she executed them or otherwise fully agreed to all terms. (See *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 842-843 (*Ruiz*).) Defendant could have done this by providing a declaration from someone with personal knowledge Quintana executed the agreements, such as a person who saw Quintana sign the documents or who had sufficient familiarity with her signature to recognize it or make a

4

side-by-side comparison. (*Joint Holdings & Trading Co., Ltd. v. First Union Nat. Bk. of North Carolina* (1975) 50 Cal.App.3d 159, 166 [Where the authenticating witness had not seen the purported signor sign his name and had not made a side-by-side comparison of signatures, the trial court acted within its discretion in concluding that the party offering the document failed to carry its burden of authentication of the document.]; *Thorstrom v. Thorstrom* (2011) 196 Cal.App.4th 1406, 1419 [proper authentication existed where "[s]everal witnesses testified that the script and signature on the [document] appeared to be in [the alleged signor]'s handwriting"].)

Loveless's declaration failed to authenticate Quintana's signature on either document. Rather, as the trial court pointed out, Loveless merely assumed the signatures were Plaintiff's based on Defendant's policy and course of business to have prospective employees sign them. This was insufficient to authenticate the signatures, particularly in the face of Quintana's dispute as to their authenticity. (See *Ruiz, supra,* 232 Cal.App.4th at pp. 843-846.)

Defendant's argument that Loveless did not need to have personal knowledge because the agreements are business records misses the point. The issue is not hearsay under Evidence Code section 1200 et seq. or the business records exception to the hearsay rule under Evidence Code section 1270. Rather, the issue is whether the signed agreements are what they purport to be: whether they are authentic under Evidence Code section 1400. Defendant's proof failed because its witness had no personal knowledge Quintana signed the agreements. Nothing in the Evidence Code allows the court to assume Quintana signed them based on testimony about Defendant's general policy of obtaining signatures.

In sum, Defendant failed to authenticate the purportedly signed employment application or the trade secrets agreement. We therefore conclude Defendant did not prove the existence of a valid, enforceable arbitration agreement.[1]

---

[1]   We deny Defendant's August 3, 2015 request for judicial notice of the three documents dealing with Court Certified Interpreters, as these documents are irrelevant to our decision.

## DISPOSITION

The order denying Defendant's petition to compel arbitration is affirmed.  Plaintiff Dulce Quintana is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


HOGUE, J. [*]

I concur:



EDMON, P. J.



LAVIN, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

6